UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/29/2019

------------------------------------------------------------X

EASTER S. MCLEOD,                                     :
                                                      :
                               Plaintiff,             :
            -against-                                 :          1:17-cv-7500-GHW
                                                      :
1199 SEIU UNITED HEALTHCARE and                       :          MEMORANDUM OPINION
DONALD CROSSWELL,                                     :            AND ORDER
                               Defendants.            :

------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

On September 29, 2017, *pro se* plaintiff Easter McLeod filed this case against her union,

1199SEIU United Healthcare Workers East (the "Union"), and the Union's Vice President, Mr.

Donald Crosswell. The Court construes Plaintiff's form complaint, including the letters and other

documents attached to the form complaint (together, the "Complaint"), to allege a litany of

violations of various federal and state laws—the gravamen of which is that the Union breached its

duty to fairly represent Plaintiff following her termination by her employer, the Lighthouse Guild,

due to her race and/or gender. Plaintiff also claims that the Union and Crosswell discriminated

against her on the basis of her national origin, religion, age, and disability—without pleading her

national origin, that she has any religious affiliation, her age, or that she has ever been disabled.

Before the Court is Defendants' motion to dismiss the Complaint for failure to state a claim

upon which relief can be granted. Even construed in the light most favorable to her, Plaintiff's

Complaint is devoid of any facts which suggest that either Defendant had an improper motive for

their actions—much less animus towards Plaintiff's protected status. Accordingly, for the reasons

which follow, Defendants' motion to dismiss the claims against them is GRANTED in its entirety.

# I.  BACKGROUND

## A.  Factual Background[1]

Plaintiff had been employed by the Lighthouse Guild[2] for almost sixteen years when she was terminated on November 24, 2015.  Compl. (ECF No. 2) at 16-17.  Plaintiff was a member of the Union for the duration of her employment at the Lighthouse Guild.  *Id.* at 5.  On November 24, 2015, the Union, by facsimile attached to the form complaint, notified the Lighthouse Guild that it was "grieving the Termination of Ms. Easter Mcleod."  Compl. at 14.

In a document attached to her form complaint, dated March 24, 2016,[3] Plaintiff wrote:  "I was terminated wrongfully, suspended 4 times on 2 occasions . . . and I can't prove it, but I believe that they [the Lighthouse Guild] tampered with my income taxes."[4]  *Id.* at 17, 19.  Furthermore, Plaintiff  was "shocked, dev[a]st[at]ed[,] and mentally overwhelmed" by her termination.  *Id.* at 17.  Indeed, following her termination, Plaintiff suffered a variety of symptoms, including a swollen face, lack of appetite, and two episodes of heart attack or stroke-like symptoms for which she sought emergency treatment.  *Id.* at 18.  During January 2016, Plaintiff started taking sleeping pills and going to counseling for depression.  *Id.* at 19.  The document ends with a plea from Plaintiff that she wanted her job back immediately.  *Id.*

According to another document attached to Plaintiff's form complaint dated May 4, 2016,[5]

---

[1]  In construing the *pro se* Complaint, the Court has taken all facts alleged as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and has considered the letters and other documents attached to Plaintiff's form complaint.  *Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)

[2] Previously known as the Jewish Guild for the Bind; Lighthouse International, and the Lighthouse Guild International.

[3] The document is styled as a letter.  However, there is no indication of to whom, if anyone, the "letter" was addressed, or that it was ever sent.

[4] For the sake of clarity, the Court notes that it will not analyze potential claims against the Lighthouse Guild in this opinion, as the Lighthouse Guild is not a defendant in this case.

[5] This document is also styled as a letter and is addressed "To Whom it May Concern."   There is no indication that it was ever sent.

Plaintiff eventually went to the Union to speak to Mr. Crosswell. *Id.* at 17. A letter from the Union to Plaintiff, also attached to her form complaint, establishes the date of that meeting as April 8, 2016, *id.* at 13, 136 days following the date of Plaintiff's termination. Plaintiff was unable to see Mr. Crosswell immediately. *Id.* Instead, Plaintiff waited for approximately forty minutes, while Mr. Crosswell met with a "male" she observed had come in after her.

Once Plaintiff was called in to see Mr. Crosswell, she began to tell him about her termination, but he cut her off and advised her that he would ask the questions. *Id.* at 15. Mr. Crosswell asked why Plaintiff did not come sooner. *Id.* He explained that the Union had sent her a letter "in reference to" her potential grievance." *Id.* That letter, dated November 24, 2015—the day Plaintiff was terminated (the "Grievance Letter")—is attached to the form complaint and states that in order to request that the Union grieve her termination, Plaintiff "must submit [her][request to [her] [Union] organizer in writing within 48 hours of [her] receipt of this letter." *Id.* at 12. Plaintiff informed Mr. Crosswell that she had not received the Grievance Letter, and when he showed her a copy of the letter from her file she noted it was sent to the wrong address. *Id.* at 16. Plaintiff was shocked that the Grievance Letter had been sent to an address which was at least 14 years out of date and she alleges that the Grievance Letter was sent to the incorrect address intentionally. *Id.* In support of her allegation that the Grievance Letter was intentionally mailed to the wrong address, Plaintiff further alleges that on February 9, 2016, eleven weeks after the Grievance letter was sent, she received a letter from the Union that had been mailed to her correct address. *Id.*

After discussing the letter, Mr. Crosswell advised Plaintiff that, after their meeting, she should fill out an "address form" downstairs. *Id.* at 5. Mr. Crosswell then told Plaintiff she "gave up [her] '[r]ights,'" and that she "could [have] come up here at any given time." *Id.* at 16. In response, Plaintiff told Mr. Croswell that she "got sick, real sick [and] at a point [she] tried to avoid the feeling [she] was feeling and [she] just couldn't avoid [it] any longer so [she] had to go to the [e]mergency

[r]oom." *Id.* By this point, Plaintiff was emotional and openly weeping, and alleges that Mr. Crosswell was "VERY COLD [and] noncaring [sic]," failing to even offer her a tissue. *Id.* Plaintiff considered this interaction to be very humiliating. *Id.* at 5.

Following the meeting, the Union contacted the Lighthouse Guild on Plaintiff's behalf. *Id.* at 13. On May 24, 2016, Mr. Crosswell sent Plaintiff a letter (the "Follow-Up Letter") indicating that the Union's request for a hearing as to Plaintiff's termination had been denied by the Lighthouse Guild due to its untimeliness. *Id.* The letter explained that the Union had never received a response to the Grievance Letter, which "requested a reply in 72 hours of receipt of said notice."[6] *Id.* The Follow-up Letter also notes that during their discussion, Plaintiff had stated that "[she] thought that [her] attorney would have dealt with the termination matter when he is addressing her outside court case" regarding her termination.[7] *Id.* Mr. Crosswell concluded the Follow-Up Letter by writing that the "matter [was] untimely and therefore . . . [was] closed." *Id.*

Also attached to the form complaint is Plaintiff's June 29, 2017 Notice of Right to Sue letter ("EEOC Letter") from the Equal Employment Opportunity Commission (the "EEOC"). *Id.* at 8. According to the EEOC letter, Plaintiff filed a complaint with the EEOC against the Union in which she alleged that she was discriminated against due to "her race (Black) and color." *Id.* The EEOC Letter describes Plaintiff's EEOC complaint[8] as alleging that the Union had failed to afford her proper representation after she was discharged by her employer, and further alleging that Mr. Crosswell was rude and uncaring when he explained that Plaintiff had lost her rights. *Id.* The EEOC was unable to conclude that Plaintiff was "subjected to an adverse employment action

---

[6] As noted above, the Grievance letter requested a reply within 48, not 72, hours. *Id.* at 12.

[7] For the referenced line of related cases as to Plaintiff's termination, *see McLeod v. Jewish Guild for the Blind*, 13-cv-6746-GHW, 2015 WL 5008732, at *4 (S.D.N.Y. Aug. 21, 2015), *vacated and remanded*, 864 F.3d 154 (2d Cir. 2017), and *vacated*, 693 F. App'x 65 (2d Cir. 2017).

[8] The EEOC complaint itself is not attached to the form complaint.

motivated by discriminatory animus" and accordingly dismissed her EEOC complaint. *Id.*

### B. Procedural History

Plaintiff initiated this action on September 29, 2017. *Id.* at 1. Plaintiff utilized a form complaint for employment discrimination cases provided by this district. *Id.* The form complaint allows for a plaintiff to check boxes to describe the statutes under which the claims are brought. *Id.* at 3-6. Plaintiff checked nearly all the boxes on the form, including the boxes asserting claims for race, color, sex, religion, sex, and national origin discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), intentional racial discrimination pursuant to 42 U.S.C. § 1981 ("§ 1981"), age discrimination pursuant to the Age Discrimination in Employment Act of 1967 (the "ADEA"), disability discrimination pursuant to the Rehabilitation Act of 1973 (the "Rehabilitation Act"), the Americans with Disabilities Act of 1990 (the "ADA"), and "employment discrimination on the basis of leave for qualified medical or family reasons" pursuant to the Family and Medical Leave Act of 1993 (the "FMLA"). *Id.* at 4. Plaintiff also checked the boxes for claims of employment discrimination pursuant to New York State Human Rights Law and New York City Human Rights Law. *Id.*

Under the heading "Adverse Employment Action" Plaintiff checked boxes alleging that Defendants: "terminated [her] employment," "provided [her] with terms and conditions of employment different from those of similar employees," "retaliated against [her]," and "harassed [her] or created a hostile work environment" despite the fact that the Complaint does not allege that either Defendant, at any point, was Plaintiff's employer. *Id.* at 5.

On April 13, 2018, Defendants filed a motion to dismiss Plaintiff's Complaint, Defs.' Mot. (ECF No. 16), and submitted a Memorandum of Law in Support of Defendant's Motion to Dismiss, Defs.' Mem. (ECF No. 17). On May 22, 2018, Plaintiff submitted a letter which the Court construes as being in opposition to Defendants' motion. Pl.'s Opp. (ECF No. 25). Plaintiff's letter, however,

did not address the issues raised in Defendants' memorandum.  Accordingly, Defendants did not

submit a reply.

Defendants' motion is currently before the Court and is ripe for adjudication.

## II.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.*  (citing *Twombly*, 550 U.S. at 556).  It is not

enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge"

claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  "To survive

dismissal, the plaintiff must provide the grounds upon which his claim rests through factual

allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v.

Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S.

at 679.  The court must accept all facts alleged in the complaint as true and draw all reasonable

inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008)

(per curiam).  However,

> '[t]hreadbare recitals of the elements of a cause of action, supported by mere
> conclusory statements, do not suffice.'  A complaint must therefore contain more
> than 'naked assertion[s] devoid of further factual enhancement.'  Pleadings that
> contain 'no more than conclusions . . . are not entitled to the assumption of truth'
> otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87-88 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678-

79).  Thus, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further

factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

In in deciding whether to dismiss a complaint under Rule 12(b)(6) the Court "'is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002).

Because Plaintiff is proceeding *pro se*, the Court must liberally construe Plaintiff's allegations and "interpret[ ] [them] to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . ."); *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Where . . . the complaint was filed *pro se*, it must be construed liberally to raise the strongest claims it suggests." (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013))). Nevertheless, "dismissal of a *pro se* complaint is [ ] appropriate where a plaintiff has clearly failed to meet the minimum pleading requirements." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

## III. DISCUSSION

As Plaintiff is proceeding *pro se* the Court construes her Complaint as raising the strongest arguments it suggests.[9] Accordingly, the Court will consider whether the Complaint plausibly alleges a breach of the Union's duty of fair representation ("DFR"), discriminatory conduct in violation of various federal anti-discrimination laws, and/or prohibited retaliation. Even viewing the facts in the light most favorable to Plaintiff, the Complaint does not plausibly allege any federal claim, and the Court declines to exercise supplemental jurisdiction over any alleged state law claims. Accordingly,

---

[9] Certain of Plaintiff's claims may not be properly alleged against Mr. Crosswell, an individual defendant. The Court presents its analysis of that issue in § III(B)(5), below.

for the reasons that follow, Defendants' motion to dismiss is granted in its entirety.

### A. Duty of Fair Representation Claim

The gravamen of Plaintiff's complaint is her allegation that the Union did not timely grieve her termination, and that it intentionally sent the Grievance Letter the wrong address preventing her from timely requesting that the Union take action on her behalf. For the reasons that follow, Plaintiff's claim that the Union violated its DFR is dismissed without prejudice.[10]

### 1. Standard

"Under federal common law, unions owe their members a duty of fair representation ('DFR'), which derives "from the union's statutory role as exclusive bargaining agent." *Dillard v. SEIU Local 32BJ*, 15-cv-4132-CM, 2015 WL 6913944, at *4 (S.D.N.Y. Nov. 6, 2015) (quoting *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 74 (1991)). "Breach of the DFR gives rise to a cause of action 'implied under the National Labor Relations Act ('NLRA'), 29 U.S.C. §§ 151-69'" *Id.* (quoting *Kalyanaram v. Am. Ass'n of Univ. Professors at New York Inst. Of Tech., Inc.*, 742 F.3d 42, 46 (2d Cir.)). "The duty of fair representation requires a union to represent all members of its bargaining unit honestly and in good faith, without hostility, discrimination, or arbitrary conduct." *Nweke v. Prudential Ins. Co. of Am.*, 25 F. Supp. 2d 203, 220 (S.D.N.Y. 1998) (citing *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). "The duty of fair representation applies to all union activity, and in all instances in which a union is acting in its representative role." *Agosto v. Correctional Officers Benev. Ass'n.*, 107 F. Supp. 2d 294, 303 (S.D.N.Y. 2000).

To plead a breach of a union's duty of fair representation, "the challenging members must establish two elements. *First*, they must prove that the union's actions or inactions are 'arbitrary, discriminatory, or in bad faith.'" *Vaughn v. Airline Pilots*, 604 F.3d 703, 709 (2d. Cir. 2010) (emphasis in original) (quoting *Air Lines Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)). "*Second*, the

---

[10] Plaintiff's DFR claim may not be properly alleged against Mr. Crosswell. *See* § III(B)(5), below.

challenging members must 'demonstrate a causal connection between the union's wrongful conduct and their injuries.'" *Id.* (emphasis in original) (quoting *Spellacy v. Airline Pilots Assn'Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)). Courts reviewing such allegations will be "'highly deferential, recognizing the wide latitude that [unions] need for effective performance of their bargaining responsibilities.'" *Id.* (quoting *O'Neill*, 499 U.S. at 78).

"A union's actions are 'arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational.'" *Id.* (quoting *O'Neill*, 499 U.S. at 67 (citation and internal quotation marks omitted). Conduct is irrational only "when it is without a rational basis or explanation." *Marquez v. Screen Actor's Guild*, 525 U.S. 33, 45-46 (1998). "Moreover, '[t]actical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach.'" *Vaughn*, 604 F.3d at 709 (quoting *Barr v. Uited Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989)).

"A union's acts are discriminatory when 'substantial evidence' indicates that it engaged in discrimination that was 'intentional, severe, and unrelated to legitimate union objectives.'" *Id.* (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am. V. Lockridge*, 402 U.S. 274, 301 (1971)). Further, "there is no requirement that unions treat their members identically as long as their actions are related to legitimate union objectives." *Id.* at 712.

"Bad faith, which 'encompasses fraud, dishonesty, and other intentionally misleading conduct,' requires proof that the union acted with 'an improper intent, purpose, or motive.'" *Id.* at 710 (quoting *Spellacy*, 156 F.3d at 126).

## 2. Discussion

Even viewed in the light most favorable to Plaintiff, the Complaint does not plausibly allege a breach of the DFR. Moreover, the Complaint, including the documents and letters attached to the

form complaint, demonstrate on its face that Plaintiff's DFR claim is time barred. Accordingly, for the reasons which follow, Plaintiff's DFR claim is dismissed.

### a. Statute of Limitations

Claims for the breach of the DFR against a union are subject to a six-month statute of limitations. *Kalyanaram*, 742 F.3d at 46. "'In this circuit, it is well settled that the cause of action accrues no later than the time when plaintiffs knew or reasonably should have known that such a breach of the duty of fair representation had occurred, even if some possibility of nonjudicial enforcement remained.'" *Id.* at 46 (quoting *Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 67 (2d Cir. 1995)).

On May 24, 2016 Mr. Crosswell sent the Follow-Up letter to Plaintiff summarizing their interaction on April 8, 2016. Compl. at 13. In the Follow-Up letter, Mr. Croswell informed Plaintiff that the union would not pursue any further action regarding Plaintiff's termination. *Id.* There is a "presumption that a mailed document is received three days after its mailing." *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011). The Follow-Up Letter is attached to the Complaint. *Id.* at 13. Accordingly, on the face of the Complaint, the very latest date on which Plaintiff knew, or should have known, have become aware that the Union would not grieve her termination was May 27, 2016—three days after the date when Mr. Croswell sent the Follow-Up letter.

Even assuming that May 27, 2016—the latest possible date—is in fact the earliest date on which when Plaintiff knew, or should have known, that the Union would not grieve her complaint, the statute of limitations would have expired as to any DFR claim on November 27, 2016. As noted above, this case was not filed until September 29, 2017, nearly a full year later. Accordingly, Plaintiff's DFR claim against the Union is time barred by the six-month statute of limitations and is

dismissed without prejudice.[11]

**b. Substantive Allegations**

Even if Plaintiff's DFR claim were not time barred, it would nonetheless be dismissed as

Plaintiff has failed to to allege any improper motivation on the part of either Defendant.

First, the Court considers whether any DFR claim could arise from Plaintiff's meeting with

Mr. Croswell itself. On April 8, 2016, Plaintiff met with Defendant Croswell regarding her

termination from her job. Plaintiff alleges that she had to wait for between twenty and forty minutes

to be seen while a male who came in after her was seen first. Plaintiff further alleges that, while she

was very emotional when discussing her termination with Defendant Croswell, he was cold, direct,

and unresponsive, and failed to offer her a tissue while she wept.

Even presuming the truth of all the facts alleged, there is no allegation that conduct which

could be considered "intentional, severe, and unrelated to legitimate union objectives" took place

during the April 8, 2016 meeting. *Amalgamated*, 402 U.S. at 301. Plaintiff's allegations of rudeness

and disrespect, even taken as true, do not rise to the level of arbitrary, discriminatory, or bad faith

conduct required for a DFR claim, nor has Plaintiff pleaded any connection between Mr. Crosswell's

April 8, 2016 conduct and Plaintiff's ability to grieve her termination. And while Plaintiff alleges

that a "male" who arrived after her was nonetheless able to see Mr. Crosswell before her, she does

not allege that the reason he was seen first was because of his gender. Accordingly, the Court

concludes that Mr. Croswell's conduct on April 8, 2016, as alleged, does not give rise to a DFR

claim.

---

[11] Despite the fact that the DFR claim is, on its face, time barred, the Court does not dismiss *pro se* Plaintiff's DFR claim with prejudice, as Plaintiff has not addressed what, if any, facts would support an argument of equitable tolling. *See Harris v. Transp. Workers Union L-100*, 07-cv-1031-RJD, 2007 WL 9723338, at *5 (E.D.N.Y. Oct. 17, 2007) (analyzing equitable tolling the context of a DFR claim). The Court notes, however, that the statute of limitations applicable to DFR claims was addressed in Defendants' briefing, and was not discussed in Plaintiff's opposition to this motion to dismiss. Accordingly, if Plaintiff fails to address this issue in subsequent submissions, the Court may determine that this dismissal without prejudice has ripened into a dismissal with prejudice.

Second, the Court considers whether Defendants' failure to timely grieve Plaintiff's termination gives rise to a DFR claim. While the majority of the complaint is focused on Plaintiff's interaction with Mr. Croswell, it is this second claim which is comparatively colorable. However, for the reasons that follow, this claim is also inadequately pleaded.

Plaintiff has alleged that during the April 8th meeting, Plaintiff was informed for the first time that the Grievance Letter had been sent to the wrong address. That letter, had it been received, would have advised Plaintiff that she had 48 hours to submit a request for the Union to grieve her termination. However, Plaintiff has alleged that the letter was sent to a prior address, at which she had not resided in many years, and that, as a result, she never received the letter. As Plaintiff never received the letter, she never had the opportunity to timely submit a response—with the corollary that Defendant may not have attempted to grieve her termination in earnest until after her April 8, 2016 meeting with Mr. Croswell.[12] And while Defendants did ultimately take action on Plaintiff's behalf in regard to her termination, as a result of the circumstances described above that action was untimely and unsuccessful.

Accordingly, the failure to send the Grievance Letter to Plaintiff's correct address is directly corelated with her failure to timely notify the Union of her desire to grieve her termination, and the Union's ultimate failure to grieve her termination. In sum, Plaintiff has adequately alleged a causal connection between the Union's actions or inactions and her injuries. *Vaughn*, 604 F.3d at 709.

Furthermore, Plaintiff has alleged that Defendants "intentionally" sent the Grievance Letter to the wrong address. Intentionally mailing an essential document, such as the Grievance Letter, to the wrong address could constitute bad faith conduct. *Id.* at 710.

---

[12] The Court notes, however, that the November 24, 2015 facsimile from the Union to the Lighthouse Guild, which is attached to the form complaint, indicates that the Union notified the Lighthouse Guild of its intent to grieve Plaintiff's termination, and is therefore somewhat contradictory to her claim of intentional misconduct. Compl. at 14.

However, an allegation of bad faith also requires that Plaintiff allege "an improper intent, purpose, or motive," which is not present in the Complaint.[13] *Vaughn*, 604 F.3d at 710. Without such an allegation, Plaintiff's bare allegation of intentional misconduct does not "nudge [plaintiff's claim] across the line from conceivable to plausible." *Id.* (quoting *Iqbal*, 129 S.Ct at 1951) (alterations in original). As Plaintiff has not alleged an illicit motivation for the Union's conduct, Plaintiffs DFR claim, even were it not time barred, is inadequately pled and subject to dismissal.

## B. Discrimination Claims

None of Plaintiff's claims under federal antidiscrimination laws are adequately pleaded, as to either Defendant. Accordingly, for the reasons which follow, all such claims are dismissed.

### 1. Title VII and § 1981

The Court construes the Complaint as bringing claims under Title VII and § 1981. On the record before it, the Court cannot conclude that those claims are time barred. However, as the Complaint fails to allege either a breach of the duty of fair representation, or that either Defendant was motivated by animus towards Plaintiff's protected status, Plaintiff's Title VII and § 1981 claims are dismissed.

#### a. Not Clearly Time Barred

"[A] union may also face liability under Title VII, § 1981, and the ADA if it breaches its duty of fair representation. As to such claims, the statute of limitations under Title VII, § 1981, and the ADA—not the six-month statute of limitations for breach of duty of fair representation—controls." *Nweke*, 25 F. Supp. 2d at 219. "Generally, Title VII and ADA discrimination claims must be filed with the EEOC within 180 days of the date when the alleged unlawful employment practice occurred. However, in New York, which has its own antidiscrimination laws and enforcement agency, the limitations period for filing EEOC claims is extended to 300 days." *Id.* at 216. If the

---

[13] Nor does the Complaint adequately allege that Defendants' actions were discriminatory or arbitrary.

EEOC issues a notice of a plaintiff's right to sue, then that plaintiff must file their court case within 90 days after receipt of the notice to avoid being time barred. 42 U.S.C. § 2000e-5(f)(1).

As discussed above, for the purposes of this motion the Court presumes that Plaintiff became aware of the conduct at issue on May 27, 2016. Plaintiff received the EEOC Letter, including her notice of right to sue, on or about June 29, 2017, well after the applicable 300-day limit. However, the Complaint does not allege or otherwise indicate on what date Plaintiff filed her complaint with the EEOC. Accordingly, on the record before it, the Court cannot conclude that Plaintiff did not file her EEOC complaint within the 300-day window—and so continues its analysis assuming, but not holding, that Plaintiff's EEOC complaint was timely filed.

This case was filed on September 29, 2017, within 90 days of June 29, 2017, the earliest day on which Plaintiff could have received her right to sue notice. *See* Compl. at 8. Accordingly, on the record before it, the Court cannot conclude that Plaintiff's Title VII or § 1981 claims are time barred at this stage of the case.

### b. Discussion

As Plaintiff's Title VII and § 1981 claims are not clearly time barred, the Court considers whether they are adequately plead. As the Complaint fails to allege either a breach of the Union's DFR, or that either Defendant was motivated by animus towards Plaintiff's protected status, Plaintiff's Title VII and § 1981 claims are dismissed. [14]

"Title VII [and § 1981] claims against labor organizations are subject to an analysis different from that applicable to Title VII claims against employers." *Beachum*, 785 F. Supp. 2d at 103; *Nweke*, 25 F. Supp. 2d at 22 (applying the same standard to Title VII and § 1981 claims against union defendant). "[W]here a plaintiff claims that a union violated Title VII based on its failure to

---

[14] As discussed in § III(B)(5), below, Title VII claims may not be properly brought against Mr. Crosswell. To the extent that § 1981 claims are brought against Mr. Crosswell, Plaintiff's failure to allege that any of his conduct was motivated by animus towards her protected status is fatal to those claims.

represent a member, courts in this Circuit generally incorporate the duty of fair representation as one of the elements of the alleged Title VII violation." *Beachum*, 785 F. Supp. 2d at 103 (quoting *Agosto*, 107 F. Supp. 2d at 304) (alteration in original). "This requirement also applies to cases under Section 1981." *Id. See Nweke*, 25 F. Supp. 2d at 221.

"To bring a Title VII discrimination claim against a union . . . the plaintiff must demonstrate that (1) the Union breached its duty of fair representation to plaintiff; and (2) that the Union's conduct was motivated by animus toward the plaintiff's protected status." *Dillard v. SEIU Local 32BJ*, 2015 WL 6913944, at *4 (S.D.N.Y. Nov. 6, 2015) (citing *McIntyre v. Longwood Cent. Sch. Dist.*, 380 F. App'x 44, 49 (2d Cir. 2010); *Cooper v. Wyeth Ayerst Lederle*, 106 F. Supp. 2d 479, 502 (S.D.N.Y. 2000); *Agosto*, 107 F. Supp. 2d at 304 (S.D.N.Y.2000); *Nweke*, 25 F. Supp. 2d at 220-21 (S.D.N.Y. 1998). Plaintiff's "section 1981 claims are analyzed under the same standards as Title VII claims." *McIntyre*, 658 F. Supp. 2d at 422 (E.D.N.Y. 2009) (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000).

In the Complaint, Plaintiff checked the boxes for employment discrimination under Title VII because of her race, color, religion, sex, and national origin. She also checked the boxes for intentional employment discrimination under § 1981 on the basis of her race. Plaintiff does not allege her race, national origin, ethnicity, religion or gender in the form complaint, or the attached handwritten documents. However, the attached EEOC right to sue notice indicates that, in her EEOC complaint, she alleged discrimination "due to [her] race (Black)." Compl. at 8. Furthermore, the Court takes notice of the letters attached to the form complaint, in which Plaintiff is referred to as "Ms.," and infers that she is female. *Id.* Accordingly, the Court construes the Complaint as adequately alleging Plaintiff's protected status.[15]

---

[15] The Complaint does not, however, allege her national origin or religion. Accordingly, to the extent the Complaint could be construed to include claims of discrimination due to Plaintiff's religion or national origin, those claims re dismissed as inadequately pled.

As discussed above, Plaintiff has failed to adequately plead that the Union breached its DFR—which is an independently fatal flaw in her claims against the Union. However, even assuming, *arguendo*, that Plaintiff had adequately alleged a breach of the DFR, she has not pleaded facts from which the Court could even infer that either Defendant was motivated by animus towards her protected status.

"In order to survive a motion to dismiss, the plaintiff must allege facts supporting an inference of discrimination, and not simply rely on the union's failure to take" action. *Dillard*, 2015 WL 6913944, at *7. Even proceeding *pro so,* it is insufficient for Plaintiff to merely allege her protected status. Rather, she "'must plead some facts that, if credited by a jury, would give rise to the conclusion she wants the trier [of fact] to draw—namely, that the *reason the union refused to grieve*" her termination was because of her membership in a protected class, "as opposed to one of the many perfectly legitimate reasons why a union would decide not to proceed with a particular grievance." *Id.* at *7 (citing *Robinson v. Macy's*, 14-cv-4937-CM, 2014 WL 6997598, at *10 (S.D.N.Y. Dec. 5, 2014) (emphasis in original).

Although Plaintiff has, albeit indirectly, alleged her race and sex, and alleged that the Union failed to represent her in various ways, she has not pleaded any facts supporting an inference that the *reason* for any of the Defendants alleged conduct was in any way related to her race or sex. Further, Plaintiff has not pleaded any facts tending to show other union members received better treatment by the Union.[16] *Dillard*, 2015 WL 6913944, at *8.

As Plaintiff has failed to plead facts which give rise to even an inference of improper motivation on the part of either Defendant, and has failed to plead that the Union breached its

---

[16] Indeed, the closest the Complaint comes to even discussing issues of race or gender is its passing mention of a male who was able to see Mr. Crosswell before Plaintiff, even though he arrived in the waiting room after she did. There is no allegation that the reason the man was seen first was because of his gender, nor does the Complaint ever mention that Plaintiff even perceived Mr. Crosswell's actions to be in any way impacted by her race or gender.

DFR, her Title VII and § 1981 claims are dismissed without prejudice.

## 2. Age Discrimination in Employment Act and Americans with Disabilities Act

Plaintiff has alleged no facts which implicate the ADA or the ADEA. However, given Plaintiff's *pro se* status, and the fact that Plaintiff checked the boxes for employment discrimination under the ADEA and the ADA, the Court considers whether any claim under the ADA or ADEA is plausibly alleged. For the reasons which follow, neither claim is plausibly alleged, and, in any event, the Court lacks subject matter jurisdiction over any such claims due to Plaintiff's failure to exhaust her administrative remedies as to such any ADA or ADEA claims.

Simply put, the Complaint is devoid of any alleged facts suggesting either defendant was motivated by animus towards her age or disability. Indeed, the Complaint does not include any information from which the Court could infer Plaintiff's age, nor does it allege that she has a disability of any kind.[17] Therefore, as there is no indication in the Complaint that Plaintiff is a member of a class protected by either the ADA or the ADEA—let alone any allegation of how any issue of age or disability impacted any of the alleged events—the Court concludes that the facts alleged in the Complaint do not support even an inference that the *reason* that the Grievance Letter was to the wrong address, Mr. Croswell acted rudely during his meeting with Plaintiff meeting, and/or the Defendants failed to pursue Plaintiff's grievance, was in any way related to Plaintiff's age or disability.[18] *See Velasquez*, 12 F. Supp. 3d at 416.

Furthermore, even if Plaintiff had adequately alleged such claims, those claims would

---

[17] The Complaint does include a lengthy and graphic description of the symptoms Plaintiff developed after she was terminated. However, none of those symptoms were described as a disability, and Plaintiff developed those symptoms after she was terminated by her employer, the Lighthouse Guild, prior to her interactions with Mr. Crosswell at issue here. Furthermore, even if the Court assumed, *arguendo*, that Plaintiff was describing a disability, there is no allegation in the Complaint that those symptoms in any way impacted any defendants' conduct.

[18] Nor has Plaintiff pleaded any facts suggesting that other union members received better treatment by the Union. *Dillard*, 2015 WL 6913944, at *8.

nonetheless be barred due to Plaintiff's failure to exhaust her administrative remedies. *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998) ("It is true that we generally have no jurisdiction to hear claims not alleged in the employee's EEOC charge."); *Agosta v. Suffolk* Cty., 981 F. Supp. 2d 167, 172 (E.D.N.Y. 2013) ("A district court only has jurisdiction to hear claims brought pursuant to the ADA that are either contained in the EEOC charge or that are "reasonably related" to the claims in the EEOC charge.").

The June 29, 2017 EEOC letter, which Plaintiff attached to her form complaint, indicates that Plaintiff "allege[d] that [she] was discriminated against due to [her] race (Black) and color." Compl. at 8. No other discriminatory allegations are described in the letter. *Id.* Therefore, it is clear from the face of the Complaint that Plaintiff did not allege claims related to age or disability in her EEOC complaint, and has, accordingly, failed to exhaust her administrative remedies as to any such claims.

Nor does the doctrine of reasonable relation apply here. "[A] district court only has jurisdiction to hear claims that are either included in a plaintiff's EEOC charge or are based on subsequent conduct which is 'reasonably related' to the conduct alleged in the EEOC charge." *Dahbany-Miraglia v. Queensboro Cmty. Coll.*, 3-cv-8052-SAS, 2004 WL 1192078, at *5 (S.D.N.Y. May 27, 2004) at *14 (S.D.N.Y. 2004) (citing *Legnani v. Alitalia Linee Aerree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001)). "Claims premised on entirely different types of discrimination are not considered reasonably related." *Id.*; *Robinson v. Macy's*,14-CV-4937 CM, 2014 WL 6997598, at *5 (S.D.N.Y. Dec. 5, 2014) (age discrimination claim not reasonably related to race, national origin, or religion discrimination claims). Therefore, the Court concludes that it lacks subject matter jurisdiction over any claims under the ADEA or ADA, even if such claims were properly alleged.

Accordingly, for all these reasons, Plaintiff's claims under the ADEA and the ADA are dismissed.

### 3. Retaliation

Plaintiff also checked the retaliation box on her form discrimination complaint, but has alleged no facts that suggest that either Defendant retaliated against her due to a protected activity. To the contrary, the Complaint makes clear that the events at issue occurred before she engaged in any protected activity—rendering any claim that the Defendants failed to grieve her termination as a retaliatory measure implausible.

"To make out a prima facie case of retaliation by a union, a plaintiff must show that (1) she was engaged in an activity protected under Title VII and known to the union; (2) she suffered adverse union action; and (3) there was a causal connection between the protected activity and the union's actions." *Agosto*, 107 F. Supp. 2d at 309 (S.D.N.Y. 2000) (citing *Yerdon v. Henry*, 91 F.3d 370, 377 (2d Cir. 1996)); *accord Nweke*, 25 F.Supp.2d at 230. "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Agosto*, 107 F. Supp. 2d at 309 (citing *Cruz v. Coach*, 202 F.3d 560, 566 (2d Cir. 2000)).

The only protected activity alleged or referenced here is the EEOC complaint discussed in the EEOC letter attached to Plaintiff's form complaint. However, the Complaint contains no suggestion that any action, or lack thereof, on the part of either Defendant was caused by, or in any way linked to, this protected activity. Indeed, the EEOC Letter is dated June 29, 2017, over a year after Plaintiff's interactions with Mr. Croswell on April 8, 2016, and nearly two years after Plaintiff's termination and the Union's failure to grieve her termination. *See* Compl. at 8. Therefore, the Court concludes that Plaintiff has not alleged any wrongful conduct which took place *after* Plaintiff filed her EEOC complaint—rendering Plaintiff's retaliation claim a temporal impossibility on the basis of the facts alleged.

Accordingly, Plaintiff 's retaliation claim is dismissed without prejudice.

### 4. Other Potentially Alleged Federal Claims

Plaintiff checked the boxes on her form complaint indicating that she was bringing claims for wrongful termination, and harassment/hostile work environment. She did so despite the fact that neither Defendant was her employer—indeed as noted above in note seven she brought a separate action against her employer. In the interest of clarity, to the extent the Complaint could be construed to allege wrongful termination, harassment, or hostile work environment, in violation of Title VII, § 1981, or otherwise, those claims are dismissed without prejudice as there is no allegation that any Defendant was, at any time, Plaintiff's employer, nor is any nexus between any action taken by either Defendant and Plaintiffs' termination alleged.[19] *See Littlejohn v. City of New York, 795 F.3d 297, 313 (2d Cir. 2015)* (quoting *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1239 (2d Cir. 1995) ("To establish a prima facie case of gender discrimination, a female plaintiff must show that she was qualified for the position, that her *employer* discharged her, and that the *employer* sought or hired a male to replace her.") (emphasis added).

Plaintiff also checked boxes asserting claims under the Rehabilitation Act. Under the Rehabilitation Act, "a plaintiff can state a claim for discrimination based upon her employer's failure to accommodate her handicap by alleging facts showing (1) that the employer is subject to the statute under which the claim is brought, (2) that she is an individual with a disability within the meaning of the statute in question, (3) that, with or without reasonable accommodation, she could perform the essential functions of the job, and (4) that the employer had notice of the plaintiff's disability and failed to provide such accommodation." *Lyons v. Legal Aid Soc.*, 68 F.3d 1512, 1515 (2d Cir. 1995). Plaintiff has not plausibly alleged a violation of the Rehabilitation Act because she has not alleged a disability, alleged an accommodation required by a disability, or that any such

---

[19] As discussed above, the Complaint is devoid of facts which suggest, and Defendant was motivated by animus towards Plaintiff's protected status.

accommodation was wrongfully denied.  Accordingly, any claims under the Rehabilitation Act are dismissed without prejudice.

Plaintiff also checked the box alleging claims under the FMLA.  "Although the definition of 'employer' in the FMLA" is broad, "a plaintiff in an FMLA action must nevertheless allege that the defendant 'controlled in whole or in part Plaintiff's rights under the FMLA.'"  *Von Maack*, 2014 WL 5801349, at *6 (quoting *Smith v. Westchester County*, 769 F. Supp. 2d 448, 475 (S.D.N.Y. 2011)); *see* 29 U.S.C. § 203(d) (defining "employer" to exclude labor organizations).  As Plaintiff has not alleged any facts upon which the Court could conclude that either Defendant was, at any point, her employer as defined by the FMLA, any claims under the FMLA are dismissed without prejudice.

### 5.  Federal Claims Against the Individual Defendant

For the reasons stated above, all federal claims against both defendants have been dismissed. However, certain of those claims cannot be brought against Mr. Crosswell, as an individual defendant, and are accordingly dismissed with prejudice.  Those claims are as follows.

Individual defendants may not be held liable in their personal capacity for alleged violations of the ADA or the Rehabilitation Act.  *See Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009). Accordingly, any Rehabilitation Act or ADA claims against Mr. Croswell are dismissed with prejudice.

Similarly, Title VII claims cannot be properly alleged against individual defendants, *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000), nor can ADEA claims.  *Wray v. Edward Blank Assocs.*, 924 F. Supp. 498, 504 (N.Y.S.D. 1996).  Accordingly, any claims against Mr. Croswell arising under Title VII or the ADEA are dismissed with prejudice.

In the interest of clarity, the Court further notes that it is the Union, not Mr. Croswell, who owed Plaintiff a duty of fair representation.  *See Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 73 (1989).  Mr. Crosswell, who acted in his capacity as an agent of the Union, is

immune to liability due to any breach of the Union's DFR. *Morris v. Local 819, Int'l Bhd. of Teamsters*, 169 F.3d 782, 784 (2d Cir. 1999) ("We now join the other circuits that have considered the issue and hold that 29 U.S.C. § 185(b) and the caselaw provide a shield of immunity for individual union members in suits for breach of the duty of fair representation.") Accordingly, any claims against Mr. Croswell due to the Union's alleged breach of its DFR are also dismissed with prejudice.

### C. State Law Claims

To the extent that Plaintiff's Complaint can be construed to raise claims under New York State or municipal law, the Court declines to exercise supplemental jurisdiction over such claims, with the consequence that those claims are also dismissed without prejudice.[20]

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, pursuant to 28 U.S.C. § 1367(c)(3), the exercise of supplemental jurisdiction over Plaintiff's non-federal claims is within the Court's discretion if it has "dismissed all claims over which it has original jurisdiction." The Second Circuit counsels against exercising supplemental jurisdiction in such a situation: "'[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'" *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) (quoting *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991)).

Having dismissed all of Plaintiff's claims based on a federal question under 28 U.S.C. § 1331, and there being no other basis for federal jurisdiction over this case, the Court declines to exercise

---

[20] Plaintiff has not plead that this court has diversity jurisdiction, nor pled facts sufficient for the Court to determine whether there is complete diversity amongst the parties, or if the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

its supplemental jurisdiction over any remaining state or municipal law claims. *See* 28 U.S.C. §

1367(c)(3). Accordingly, those claims are dismissed without prejudice.

### D. Leave to Amend

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec*

*Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The

court should freely give leave [to amend] when justice so requires."). Moreover, "leave to replead

should be liberally granted to *pro se* litigants." *Vallen v. Plan*, No. 15-CV-0703(JS)(ARL), 2016 WL

482026, at *4 (E.D.N.Y. Feb. 4, 2016) (citing *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).

Accordingly, the Court grants Plaintiff leave to serve an amended complaint to the extent she can

cure any of the defects identified in this opinion.

However, Plaintiff is not granted leave to amend the Complaint as to the claims which have

been dismissed with prejudice. Accordingly, for the reasons stated above in § III(B)(5), Plaintiff is

not granted leave to replead her Title VII, ADA, ADEA, Rehabilitation Act, or DFR claims against

Mr. Croswell in his individual capacity, as those claims have been dismissed with prejudice.

The Court notes with concern that Plaintiff's opposition letter did not address the issues

raised by Defendants in their motion to dismiss, and cautions Plaintiff that even *pro se* litigants are

not granted unlimited opportunities to amend their pleadings. The Court expects that any amended

complaint will be responsive to the issues discussed in this opinion.

### IV.     CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED in its entirety,

and Plaintiff's Complaint is dismissed. To the extent described in § III(D), Plaintiff is granted leave

to amend her Complaint to remedy the deficiencies identified in this opinion no later than thirty

days following the date of this order.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not

be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.

*See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court requests that counsel for Defendants provide Plaintiff with copies of any unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

The Clerk of Court is directed to terminate the motion pending at ECF No. 16 and to mail a copy of this opinion order to Plaintiff by certified mail.

SO ORDERED.

Dated:  March 29, 2019
New York, New York

_____
GREGORY H. WOODS
United States District Judge